CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ M. Poff**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JULIAN HUFFMAN,                     )
    Petitioner,                     )        Civil Action No. 7:25-cv-00441
                                    )
v.                                  )
                                    )        By: Elizabeth K. Dillon
JOSEPH WALTERS,[1]                  )            Chief United States District Judge
    Respondent.                     )

## MEMORANDUM OPINION

Julian Huffman, a Virginia inmate acting *pro se*, filed this 28 U.S.C. § 2254 petition which challenges his convictions in Wise County Circuit Court for destruction of property and trespassing.  (Habeas Pet., Dkt. No. 1.)  The respondent filed a motion to dismiss (Dkt. No. 8), and Huffman has filed a response (Dkt. No. 33).  Huffman also filed a motion to issue a subpoena and a motion to amend or correct his petition.  (Dkt. Nos. 28, 34.)

For the reasons stated below, respondent's motion to dismiss will be granted, Huffman's motions will be denied, and this matter will be dismissed in its entirety.

## I.  BACKGROUND

### A.  Procedural History in State Court

Huffman was sentenced on November 3, 2023, to three years and twelve months, of which two years and six months was suspended.  (Dkt. No. 9-1 at 3.)  His convictions were affirmed on direct appeal by the Court of Appeals of Virginia on February 13, 2024.  (Resp't Ex. 2, 3.)  Petitioner argued that the trial court had insufficient evidence for the felony property

---

[1]  Joseph Walters was appointed to serve as the Director of the Virginia Department of Corrections on January 17, 2026.  The Clerk is directed to substitute him as the respondent in this matter for the former Director, Chadwick S. Dotson.  *See* Rule 2 of the Rules Governing § 2254 Cases; Fed. R. Civ. P. 25(d).

destruction conviction and the trial court erred by qualifying Myers Fox as an expert witness. (Ex. 3 at 1–6.)

The Supreme Court of Virginia granted Huffman's motion for a delayed appeal. (Ex. 4.) However, Huffman did not file a petition for appeal, and by order dated March 21, 2025, the Supreme Court dismissed the delayed appeal. (Ex. 7.) Huffman has not filed a petition for a writ of habeas corpus in state court.

**B. Findings of Fact in State Court**

The Court of Appeals of Virginia summarized the following facts in Huffman's case:

> Cindy Smoot, the Wise County Housing Authority ("Housing Authority") property manager for the Inman Village apartment complex, banned appellant from Housing Authority property in September 2020. On August 6, 2021, surveillance video cameras recorded appellant and three other individuals repeatedly attempting to break into the laundry room in the office building at Inman Village with a hammer and screwdriver. Three days later, on August 9, 2021, Smoot noticed that the laundry room door and two windows were damaged. She also noticed a crowbar on the ground outside of the laundry room door. Smoot called the police after she realized that the damage to the laundry room was "over a thousand [dollars]." Smoot then catalogued and photographed the damage and sent photos of the damage to Myers Fox, the Section 8 housing inspector.
>
> When visiting the complex, Fox realized that the windows were a "total loss." He created an estimate regarding their repair cost that included the cost of a replacement door and windows, the labor rate for contractors, and the parts needed to be ordered. At trial, the Commonwealth attempted to qualify Fox as an expert in "construction" based on his 40 years of experience in the Housing Authority's maintenance department. Fox testified that he usually completed the estimates for any repairs and contracted out for repairs that exceeded the capability of the maintenance department. Appellant objected to Fox's qualification because he was not a licensed contractor. The trial court did not explicitly rule on the motion to qualify Fox as an expert witness. It only ruled that Fox could "testify as to what he witnessed." Fox subsequently testified that the windows and door were badly damaged and needed to be replaced because they were "just damaged too bad to be repaired."

He also stated that the door jamb was bent and its lock was broken. Fox instructed Housing Authority employees to order and pay for replacement windows and a door. Fox did not opine or otherwise testify to the replacement cost of the door and windows.

Daniel Hollyfield, an employee in the Housing Authority's accounts payable department, paid $597.80 to a supply and lumber company for a replacement window. She also paid $350 to Turner Contracting for the labor to install the replacement window. The Housing Authority maintenance department charged $111 to "repair damaged door due to break in to office." Accordingly, the repairs costs totaled $1,058.80. The Commonwealth introduced and the trial court admitted work orders and invoices for each of the three repair costs.

At the close of the Commonwealth's case-in-chief, appellant moved to strike the evidence for felony destruction of property,1 arguing that the evidence did not prove that the damages he caused exceeded $1,000. He argued that some of the damage could have been caused by the other individuals who were present and that the video failed to establish "concerted action." Alternatively, he asserted that the damage could have been caused by another individual since the building was a "high volume public place" or that it may have occurred a long time ago as the building was built in the 1980s. Appellant also argued that a bear which allegedly appeared in the video could "have been clawing to get into the laundry room." The trial court denied the motion.

Appellant, testifying on his own behalf at trial, admitted that he was at the laundromat at Inman Village on the night of the incident even though he was not supposed to be there. He explained that he was homeless, was "on drugs," and was using the laundromat to do laundry. He admitted that he solicited the help of other people, including some other residents of the apartment complex, to pry the windows and door open, purportedly because he was in a "hurry" to retrieve his clothing. Appellant conceded that "some damage may have occurred," but claimed that it was only "a little." He told the court he had no desire to return to the laundromat and would stay with his parents.

Following appellant's testimony, he renewed his motion to strike and asked the court to "consider what [he] said" in the first motion. The trial court denied the renewed motion. Appellant submitted the case without presenting closing argument, and the trial court convicted appellant of felony destruction of property and trespassing. The court found that the Commonwealth's evidence

3

demonstrated that the value of the property he destroyed was "slight[ly]" over $1,000.

(Resp't Ex. 3 at 1–4.)

## C. Petitioner's Claims

In this action,[2] Huffman advances the following claims:

1. The judge erred when it allowed the housing inspector to appear as an expert, and to give his opinion on the amount of damages. The judge abused his discretion when he allowed the housing inspector to testify to the amount of damages. The housing inspector, Mr. Fox, testified that he had worked in maintenance for 3 years before he became the housing inspector and that he had worked as a housing inspector for forty-six years. But, during voir dire, he admitted that he had no contractor license and he did not do maintenance of the buildings. He further testified that he did not order the window or the door and did not pay for them. The Defense objected to Mr. Fox being qualified as an expert. The court overruled the defense's objection and allowed Mr. Fox to testify as an expert to the damages.

2. The Court erred when it found there was sufficient evidence to convict the appellant of felony property damages. Although Cindi Smoot and Mr. Fox testified that there were damages to a window and door, only Cindi proved evidence of the cost of repairing the damage and she was not a contractor nor a qualified expert, her testimony was that "I knew it was over a thousand."

3. The Court erred by finding the damages exceeded $1,000, as the expert (the housing inspector) never testified to the amount of damages before or after he was qualified. Although he was qualified to testify as an expert, at no time did the expert state the amount of damages. The expert did not know how much the damages were; only the manager said she "knew it was over a thousand." The accounts payable clerk did testify to the bills she paid but she said the $111 was for the door "to the office" not the laundry.

4. The Court erred by including the amount $111.00 in the total damages to come to $1,058.80. The accounts payable clerk clearly stated that the amount was for the door to the "office" not "laundry." If the $111.00 is removed from the total damages, the total damages

---

[2] Huffman filed two previous habeas actions in this court.  (Civil Action Nos. 7:24-cv-328, 7:24-cv-346.) The first case was voluntarily dismissed by Huffman (Dkt. No. 38 in Case No. 7:24-cv-328), and the second case was dismissed as duplicative of the first (Dkt. No. 18 in Case No. 7:24-cv-346).

are only $947.80 which is less than the $1,000 threshold required to be a felony charge.

(Habeas Pet. 6–11.)

### D.  Respondent's Motion, Petitioner's Response and Motions

Respondent argues that Huffman's claims are procedurally defaulted due to his failure to present his claims to the Supreme Court of Virginia.  In the alternative, respondent urges that claims two through four lack merit and the first claim alleges an error of state law.  (Dkt. No. 9.)

In his response, Huffman acknowledges the respondent's argument that he has not filed a petition for habeas corpus with the Supreme Court of Virginia.  He states that he "requested that form multiple times via USPS mail from the Office of the Attorney General because that form is maintained in that office.  They never send me one I would ask that the court order the respondent to deliver me the State Habeas Corpus form to file in the Supreme Court of Virginia and to keep this case pending or dismiss without prejudice until proceedings are able to be in front of that court." (Dkt. No. 33.)  Huffman also asks for permission to file a supplemental petition with additional claims that have not been presented.  (*Id.*; *see also* Dkt. No. 34.) Huffman states that he needs a subpoena for documents from his attorney, Gary Joe Kincade, who represented him in Wise County.  Huffman explains that he was unaware his appeal to the Supreme Court was dismissed due to Kincade not filing the appeal on time.  (Dkt. No. 33.) Finally, Huffman asks for legal counsel to assist him in this matter.  (*Id.*)

In a separate motion, Huffman asks the court to issue a subpoena to Major Todd Tatum for Huffman's complete inmate file from the jail records department.  (Dkt. No. 28.)

### I.  ANALYSIS

### A.  Exhaustion and Procedural Default

5

A state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court.  28 U.S.C. § 2254(b).  A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court."  *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000).  Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court.  *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002).  Failure to do so "deprive[s] the state court of an opportunity to address those claims in the first instance."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  A petitioner must also present his federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error."  *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  A state prisoner does not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered."  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."  *Baker*, 220 F.3d at 288; *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review").  Simultaneous exhaustion and procedural default occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 722).  In that case, "the procedural bar that gives rise to

6

exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288.

To exhaust state remedies in Virginia, a petitioner "must present the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587 (E.D. Va. 2006). The claims advanced by Huffman in his petition were all raised in his direct appeal. The Supreme Court of Virginia's dismissal of his appeal was pursuant to Va. Sup. Ct. R. 5:17(a)(2). (Resp't Ex. 7.) The Fourth Circuit has held that this rule is an adequate and independent state procedural rule that forecloses federal habeas review. *See Spencer v. Murray*, 5 F.3d 758, 761 (4th Cir. 1993). Moreover, while it appears that Huffman could still file a timely state habeas petition, "the exhaustion requirement for claims not presented to the state's highest court is technically met . . . when a state procedural rule would bar consideration if the claim was later presented to the state court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Virginia law bars a petitioner from utilizing "habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect to a judgment of conviction." *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). Huffman's claims would be barred under *Parrigan*, which is also considered an independent and adequate ground for denial of a state habeas petition. *See Prieto v. Zook*, 791 F.3d 465, 468 (4th Cir. 2015).

For these reasons, Huffman's claims have been procedurally defaulted and this action will be dismissed.

7

## B. Huffman's Opposition and Motions

As noted, Huffman has requested various forms of relief in opposition to the motion to dismiss, such as the opportunity to pursue a habeas claim in state court while this matter remains pending, the ability to supplement his petition with additional claims, appointment of counsel, and the issuance of subpoenas. These requests and motions will be denied because the court is barred from consideration of the instant petition due to Huffman's procedural default in state court.

Huffman has suggested that the failure to petition the Supreme Court of Virginia on direct appeal was due to an oversight or mistake by his attorney. (Dkt. No. 33.) The denial of effective assistance of counsel can constitute grounds for cause to overcome a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim," and the exhaustion doctrine requires "*that* constitutional claim, like others, to be first raised in state court." *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) (emphasis in original). Huffman has not formally advanced an ineffective assistance of counsel claim in his petition, much less demonstrated that such a claim was properly addressed in state court to satisfy the exhaustion requirement.

For these reasons, the Huffman's petition will be dismissed and his motions will be denied.

## C. Certificate of Appealability

The court must also consider whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Section 2254 Cases. Petitioner has failed to

8

make a substantial showing of the deprivation of a constitutional right, 28 U.S.C. § 2253(c)(2), or that the court's procedural ruling is debatable among reasonable jurists, *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, the court declines to issue a certificate of appealability.

<h2 style="text-align:center">III.  CONCLUSION</h2>

For the reasons stated in this opinion, the court will issue an order granting respondent's motion to dismiss, denying the motions filed by Huffman, denying a certificate of appealability, and dismissing this matter with prejudice.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge

9